UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel.<br>TRAMAIN MCDONALD,<br><br>Petitioner,<br><br>v.<br><br>MARC HODGE, Warden,<br>Lawrence Correctional Center,<br><br>Respondent. | Case No. 11 C 7962<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

On November 8, 2011, Petitioner Tramain McDonald, proceeding *pro se,* filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. For the reasons provided below, McDonald's petition is denied.

### BACKGROUND

McDonald does not present clear and convincing evidence rebutting factual findings in the last state-court decisions to address his arguments on the merits, thus, those facts are presumed to be correct for purposes of *habeas* review. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo,* 590 F.3d 533, 537 (7th Cir. 2010). The underlying facts, as set forth by the Illinois Appellate Court in *People v. McDonald,* No. 1-04-1475 (Ill. App. Dec. 23, 2005) (unpublished) (*McDonald*), are adopted as follows. (Dkt. No. 17, State Court Record, Ex. B (referred to as "R").)

On February 22, 2003, Rudolfo Linares, the victim, went in search of McDonald to collect on a debt. Linares did not immediately find him, but he did locate McDonald's cousins, Rochelle McDonald ("Rochelle") and Beverly McDonald ("Beverly"). Linares

and Rochelle were engaged in a conversation when she pointed out that McDonald was standing across the street. Linares then called out to McDonald and began to approach him. The two men started cursing at each other. McDonald pulled a gun from his pocket, fired it at Linares's head, and then fled. Rochelle then approached Linares, who was still standing and apparently unaware that he had been shot, to indicate that he was bleeding from his ear. The police arrived approximately ten minutes after the shooting, and Rochelle explained what happened. Linares later went to the police station to view a photo array, but he was unable to identify McDonald as the shooter. Rochelle also went to the police station, where she positively identified McDonald as the shooter. Several days later, Beverly went to the police station to disclose that she too witnessed McDonald shoot Linares. She explained the reason she waited so long to come forward was because McDonald had previously threatened her if she spoke with the police.

At trial, Linares, Rochelle, and Beverly testified to the facts outlined above. On March 5, 2004, McDonald was found guilty of attempted first-degree murder, Class 2 felony aggravated unlawful use of a weapon by a felon, aggravated battery, aggravated discharge of a firearm, and Class 4 felony aggravated unlawful use of a weapon. McDonald was sentenced to eighteen years in prison for attempted first-degree murder, six years in prison for aggravated unlawful use of a weapon by a felon, four years in prison for aggravated battery, ten years in prison for aggravated discharge of a firearm, and three years in prison for Class 4 felony aggravated unlawful use of a weapon – McDonald's sentences were to run concurrently.

McDonald timely appealed to the Illinois Appellate Court. (Answer at 2.) He appealed on three grounds: (1) evidence was insufficient to find him guilty beyond a

2

reasonable doubt; (2) ineffective assistance of counsel due to counsel's failure to procure alibi witnesses; and (3) under Illinois' one-act, one-crime rule, only two of his convictions could stand. (*Id.* at 2.) On December 23, 2005, the Illinois Appellate Court rejected his claims and affirmed his convictions for attempted first-degree murder and Class 2 felony aggravated unlawful use of a weapon. *See McDonald*, No. 1-04-1475. The appellate court vacated McDonald's convictions for aggravated battery, aggravated discharge of a firearm, and Class 4 felony aggravated unlawful use of a weapon. *Id.*

On February 22, 2006, McDonald filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court. In that petition, he raised several claims: (1) the appellate court abused its discretion in finding that it had no discretion to find the evidence introduced at trial was insufficient to find McDonald guilty beyond a reasonable doubt; (2) evidence of McDonald's past crimes was highly prejudicial and should not have been admitted into evidence; (3) testimony by a police officer and a remark made by the prosecutor during closing argument were highly prejudicial and should not have been permitted; (4) the evidence introduced was insufficient to find McDonald guilty beyond a reasonable doubt; and (5) ineffective assistance of counsel based on counsel's failure to procure alibi witnesses. (Answer at 3.) On May 24, 2006, the Illinois Supreme Court denied McDonald's petition for leave to appeal. (*Id.* at 3.)

Subsequently, on September 11, 2006, McDonald filed, before the trial court, a petition for post-conviction relief pursuant to the Illinois Post-Conviction Hearing Act. (*Id.* at 3.)[1] In this petition, McDonald alleged ineffective assistance of counsel on the

---

[1] Respondent's Answer incorrectly lists the date for the post-conviction petition as March 12, 2006, and Petitioner's petition is silent as to the date. Upon examination of the record, the correct filing date is September 11, 2006.

3

following grounds: (1) his attorney's attempt to withdraw once he demanded to go to trial; (2) his attorney's tardiness to court proceedings and general unpreparedness; (3) his attorney's questioning of McDonald at trial that "opened the door" to the State's use of his prior unrelated convictions for impeachment purposes; (4) failure to object to statements by two eyewitnesses about purported threats made by McDonald and an alleged drug deal; and (5) failure to challenge the details of a police officer's testimony related to McDonald's arrest. (Answer at 3.) The government filed a motion to dismiss McDonald's petition for post-conviction relief on May 22, 2009, and that motion was granted on July 24, 2009. (*Id.* at 3.)[2] McDonald filed an appeal of the dismissal of his petition for post-conviction relief with the Illinois Appellate Court. (*Id.* at 3.)

After filing this appeal, McDonald's counsel moved to withdraw before the appellate court on the basis of *Pennsylvania v. Finley*, 481 U.S. 551 (1987), which allows appointed counsel to withdraw from an appeal of state post-conviction proceedings when counsel has reviewed the record and found no issues of merit. In response to counsel's motion, McDonald raised four claims: (1) ineffective assistance of post-conviction counsel for failing to file an amended post-conviction petition; (2) ineffective assistance of trial counsel for failing to procure alibi witnesses, failing to present certain evidence, failing to present testimony that McDonald pled guilty to previous crimes, and failing to present mitigating testimony; (3) evidence was insufficient to find McDonald guilty beyond a reasonable doubt; and (4) ineffective assistance of trial counsel for all reasons raised on direct appeal. (Answer at 4.) The appellate court granted counsel's motion to withdraw and affirmed the circuit court's dismissal. (*Id.* at 4.) On December 23, 2010,

---

[2] Respondent and Petitioner have cited the incorrect date. The correct date for the denial of the post-conviction petition is July 24, 2009.

4

McDonald filed a *pro se* second PLA with the Illinois Supreme Court in which he raised one claim – his post-conviction appellate counsel's withdrawal violated his rights under *Anders v. California*, 386 U.S. 738 (1967). The Illinois Supreme Court denied his petition on March 30, 2011. (*Id.* at 4.)

On November 8, 2011, McDonald filed this petition for *habeas corpus*, raising three claims:

> (1) trial counsel was ineffective for failing to present evidence that would have mitigated McDonald's conduct to a lesser offense (Ground One);
>
> (2) the evidence was insufficient to find McDonald guilty beyond a reasonable doubt (Ground Two); and
>
> (3) trial counsel was ineffective for failing to present testimony of mitigating witnesses at sentencing (Ground Three).

(Pet. at 1.) On January 6, 2012, McDonald supplemented this petition by adding three more grounds for relief:

> (4) McDonald's counsel was ineffective for failing to secure the testimony of two alibi witnesses (Ground Four);
>
> (5) failing to adequately cross-examine the victim regarding his injuries (Ground Five); and
>
> (6) the trial judge was biased and prejudiced (Ground Five).

(Supp. Pet. at 1.)

## LEGAL STANDARD

*Habeas corpus* relief will not be granted unless the state court's adjudication of a claim resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

The federal court deferentially reviews the decision of the last state court. *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010). State-court factual findings are

presumed to be correct unless the petitioner rebuts this presumption with "clear and convincing evidence." *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (citing 28 U.S.C. § 2254(e)(1)). A federal *habeas* court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). The court can issue a writ only if it determines that the state court's application of federal law was "objectively unreasonable." *Williams v. Taylor*, 562 U.S. 362, 409 (2000). It is a difficult standard to meet because unreasonable means "something lying well outside the boundaries of permissible differences of opinion." *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003).

"A state petitioner seeking a writ of *habeas* corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a *habeas* petitioner must fully and fairly present his federal claims through one full round of state-court review before he files his federal *habeas* petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999) (*O'Sullivan*); *Gray v. Hardy*, 598 F.3d 324, 327 (7th Cir. 2010). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review, those claims are procedurally defaulted." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) (*Woods*). Procedural default precludes federal court review of a petitioner's *habeas* claims. *See Ward v. Jenkins*, 613 F.3d 692, 696 (7th Cir. 2010).

6

## ANALYSIS

### *Procedural Default*

Of McDonald's six grounds for relief, four of them are procedurally defaulted. Specifically, three of his four ineffective-assistance claims (failure of his counsel to highlight facts that would have reduced his charge to attempted second-degree murder (Ground One), failure to call certain mitigation witnesses at sentencing (Ground Three)[3], and failure to adequately cross examine the victim about his injuries (Ground Five)) and his claim of judicial bias (Ground Six) either were never raised in any of McDonald's numerous state-court filings or were not properly raised in one full round of state-court filings.

A petitioner must present his claims to the Illinois courts, up to and including the Illinois Supreme Court, to avoid procedural default. *See O'Sullivan*, 526 U.S. at 844. Furthermore, any claims that were not raised on direct appeal that could have been are waived. 725 Ill. Comp. Stat. 5/122-3 (2012); *People v. Britz*, 673 N.E.2d 300, 306 (Ill. 1996).

McDonald did not raise his Ground One argument in either his direct appeal or post-conviction proceedings. (*See* R at Exs. B and J.) McDonald raised his Ground Three argument for the first time in his post-conviction appeal but did not raise the argument in his post-conviction leave to appeal to the Illinois Supreme Court. Similarly, with respect to his Ground Five argument, McDonald raised the argument in his post-conviction appeal, but he did not raise the argument in his post-conviction petition for leave to

---

[3] Respondent does not argue that Ground Three is procedurally defaulted and, rather, argues that McDonald's claims fail for other reasons. McDonald's argument is also addressed below.

appeal to the Illinois Supreme Court. Last, McDonald did not raise his Ground Six argument in either his direct appeal or post-conviction proceedings. These claims, therefore, are procedurally defaulted.

McDonald may overcome this procedural default by demonstrating cause for the default and actual prejudice by showing the court's failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner has not claimed that he has satisfied either exception, nor does the record support such an argument. Accordingly, Grounds One, Three, Five, and Six are dismissed as procedurally defaulted.

*Insufficient Evidence to Support a Finding of Guilt Beyond a Reasonable Doubt*
*(Ground Two)*

In Ground Two, McDonald claims that the evidence produced at trial was insufficient to find him guilty beyond a reasonable doubt. (Pet. at 5.) "Evidence is sufficient to support a conviction if 'after viewing evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) (emphasis in original) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Further, any conflicts must also be resolved in favor of the prosecution. *Id.* This is a steep burden for McDonald to meet, and he fails to do so in his petition.

McDonald relies on several minor inconsistencies in Rochelle's and Beverly's testimony against him, such as testimony regarding the color of his clothing and the distance from which they viewed the shooting. McDonald further points to the victim's inability to identify McDonald from a photographic lineup as proof of reasonable doubt. (Pet. at 8-11.)

8

The trial judge considered these inconsistencies in Rochelle's and Beverly's testimony and resolved them in favor of the prosecution. (R. at 323.) In fact, the trial judge found Rochelle's and Beverly's testimony to be particularly credible since they were both reluctant to testify against their cousin. (*Id.* at 324.) The trial judge, in ruling on McDonald's motion for a new trial, specifically stated that the "inconsistencies did not rise to the level to make them incredible." (*Id.* at 345.) With respect to the victim's inability to identify McDonald in the photographic lineup, the trial judge found that it was unclear whether McDonald's picture was even in the lineup, so the victim's failure to identify McDonald may have been proper. (*Id.* at 323.) Given the extremely deferential standard of review and the strength of the case against McDonald, it was not unreasonable for the appellate court to hold that the trial judge was not irrational in finding sufficient evidence to convict McDonald beyond a reasonable doubt. Accordingly, Ground Two is denied.

*Ineffective Assistance of Counsel (Grounds Three and Four)*

McDonald's remaining ineffective-assistance-of-counsel claims in Grounds Three and Four are that his counsel failed to present mitigating witnesses at his sentencing and that his counsel failed to procure two alibi witnesses, respectively. To succeed on an ineffective-assistance-of-counsel claim, a petitioner must show: (1) his counsel's performance fell below "an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 698 (1984) (*Strickland*). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.*

at 694. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.*

Furthermore, when reviewing state court decisions on the merits, relief will not be granted unless the state court's adjudication of a claim resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The court can issue a writ only if it determines that the state court's application of federal law was "objectively unreasonable," not merely incorrectly applied. *Williams v. Taylor*, 562 U.S. 362, 409 (2000).

McDonald's argument in Ground Three appears to be procedurally defaulted, but because Respondent has addressed McDonald's argument on the merits, it is considered here. Five affidavits of McDonald's relatives were submitted at his sentencing. Collectively, these five affidavits averred as to the loving nature of his familial relationships, the responsibility that he exhibited while growing up, the way he helped around the house, and how he assisted in raising his younger siblings. During sentencing, McDonald's counsel stated that he "maintains a good rapport with his family" and that his mother and other family members were in court for support. (R. at 350.) Further, McDonald's counsel spoke to the fact that McDonald helped raise his younger siblings so that his mother could complete school (*id.* at 351), and that McDonald was attempting to complete his GED and had been enrolled in a prison education program (*id.* at 350). McDonald has, therefore, not demonstrated that his counsel's performance at sentencing,

reviewed "as a whole," was deficient. *Thompson v. Battaglia*, 458 F.3d 614, 616 (7th Cir. 2006).

With respect to prejudice, the question is whether there is a reasonable probability that the result would have been different if the witnesses had been called. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1408 (2011) (*Pinholster*). Here, McDonald's proposed evidence would have included statements from family and friends that McDonald was "a very thoughtful person," helpful around the house, and someone who "exhibited empathy and compassion."[4] (R, Ex. P at C49-52.) None of the additional details that could have been raised by the additional mitigating witnesses would create a reasonable probability that the sentence would have been different. *See Pinholster*, 131 S. Ct. at 1410 (rejecting value of similarly "sparse" mitigating evidence).

As to Ground Four, on direct review of McDonald's case, the Illinois Appellate Court reasonably rejected the argument that McDonald's counsel was ineffective for failing to procure alibi witnesses. The court correctly applied the state law equivalent of the *Strickland* standard and determined, in light of the overwhelming evidence indicating he committed the crime, that there was not a reasonable probability the outcome would have been any different if the alibi witnesses testified. The court determined one of McDonald's potential witnesses, Megan Diederich, was not a valid alibi witness because she was not alleged to be with him at the time of the shooting. Diederich dropped McDonald and Smith off at Smith's apartment on the morning of February 22, 2003, then

---

[4] McDonald also argues ineffective assistance based on his counsel's failure to submit his GED certificate or his Bible study course completion affidavit. But McDonald did not complete either until after his sentencing date. According to McDonald's affidavit, he completed his Bible study course in December 2006 after thirty months of coursework. If accurate, he would not have begun this class until June 2004. His sentencing took place on March 23, 2004.

11

left; the shooting occurred on February 22, 2003, at 2:30 p.m. Furthermore, the appellate court also determined that the trial judge would have viewed the testimony of McDonald's other alibi witness, Victoria Smith, skeptically since two of McDonald's cousins were at the scene of the shooting and credibly testified against him.

In sum, although not addressed by any state courts, McDonald cannot establish a reasonable probability of a lesser sentence if counsel had called his mitigating witnesses. Likewise, it was not unreasonable to determine that McDonald would be unable to establish a reasonable probability that the outcome of his trial would have been different if the alibi witness was called. Therefore, Grounds Three and Four are denied.

*Certificate of Appealability*

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant McDonald a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this Order.

A *habeas* petitioner does not have the absolute right to appeal a district court's denial of his *habeas* petition; instead, he must first request a certificate of appealability. *See Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Under this standard, McDonald must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*Slack*)).

In cases where a district court denies a *habeas* claim on procedural grounds, the *habeas* court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 485.

Here, reasonable jurists would not debate that McDonald's Grounds One, Three, Five, and Six are procedurally barred. Nor would a reasonable jurist debate that Grounds Two, Three, and Four should have been resolved in a different manner. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the reasons set forth above, McDonald's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 [1] is denied. A certificate of appealability is not granted.

DATE: May 9, 2012

JOHN W. DARRAH
United States District Court Judge